

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HUGH CULIK,

        Plaintiff,

vs.

UNIVERSITY OF DETROIT MERCY,
f/k/a UNIVERSITY OF DETROIT,
a *Michigan non profit corporation*,
and KATHLEEN BUSH, CLINTON HIRST,
HOLLY KERSTNER, RICHARD KOWALCZYK,
and SUSAN TRUDEAU, *jointly and severally*,

        Defendants.

DEMAND FOR JURY TRIAL

CASE NO. 02-70773

HON. LAWRENCE P. ZATKOFF
MAG. JUDGE PEPE

FILED APR 26 P2:49
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT

---

| | |
|---|---|
| Deborah L. Gordon (P27058)<br>Carol A. Laughbaum (P41711)<br>Deborah L. Gordon, PLC<br>Attorneys for Plaintiff<br>26862 Woodward Avenue, Suite 202<br>Royal Oak, Michigan 48067-0959<br>Telephone (248) 542 3784 | Leonard M. Niehoff (P36695)<br>Charlotte G. Rowan (P61153)<br>Butzel Long<br>Attorneys for Defendants<br>150 West Jefferson, Suite 900<br>Detroit, Michigan 48226-4430<br>Telephone (313) 225 7056 or 225 7095 |

## SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same occurrence as alleged in this complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this court.

Plaintiff **Hugh Culik** by his attorneys **Deborah L. Gordon PLC** pursuant to this Court's April 17, 2002 Opinion and Order requiring that Plaintiff plead his claims as set forth in his original Complaint pursuant to §301 of the Labor Management Relations Act states:

## Jurisdiction and Parties

1.  This action arises out of Plaintiff's employment with the University of Detroit-Mercy.

2.  Plaintiff **Hugh Culik** (hereafter Plaintiff **Culik**) is a resident of Wayne County, Michigan.

3.  Defendant **University of Detroit Mercy** *f/k/a* University of Detroit (hereafter Defendant **UDM**) is a Michigan non-profit corporation that maintains its principal place of business in Wayne County, Michigan.

4.  Defendant **Kathleen Bush** (hereafter Defendant **Bush**) is a resident of Wayne County, Associate Dean for the College of Liberal Arts at Defendant **UDM**, and an agent of Defendant **UDM**.

5.  Defendant **Clinton Hirst** (hereafter Defendant **Hirst**) is a resident of Oakland County, a Professor in Defendant **UDM**'s English Department, and an agent of Defendant **UDM**.

6.  Defendant **Holly Kerstner** (hereafter Defendant **Kerstner**) is a resident of Macomb County, is Director of University Academic Advising Services at Defendant **UDM**, and an agent of Defendant **UDM**.

7.  Defendant **Richard Kowalczyk** (hereafter Defendant **Kowalczyk**) is a resident of Wayne County, a former professor at Defendant **UDM** and is or was at pertinent times an agent of Defendant **UDM**.

8.  Defendant **Susan Trudeau** (hereafter Defendant **Trudeau**) is a resident of Wayne County, a staff member in University Academic Advising Services at Defendant **UDM** and is an agent of Defendant **UDM**.

2

9. Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** are being sued in both their individual and representative capacities.

10. The events giving rise to this cause of action occurred in Wayne County, Michigan.

11. The amount in controversy exceeds Twenty Five Thousand ($25,000) Dollars, exclusive of interest, costs and attorney fees and the matter is otherwise within the jurisdiction of this Court.

## Background Facts

12. In 1989, Plaintiff **Culik** began working for Defendant **UDM** as an Adjunct Professor in its English Department.

13. In August 1993, Plaintiff **Culik** was promoted to Assistant Professor.

14. In August 1997, Plaintiff **Culik** was promoted to Associate Professor and was granted tenure.

15. In April 1998, Plaintiff **Culik** was elected Chair of Defendant **UDM**'s English Department.

16. Throughout the course of his employment with Defendant **UDM**, Plaintiff **Culik** performed his job duties in a manner that has been satisfactory or better.

17. On or about May 18, 2001 Defendant **UDM** suspended Plaintiff **Culik** and removed him as Chair of the English Department pending an "investigation" into non-specific allegations against **Culik.**

18. Plaintiff **Culik** later learned that certain female students had objected to the content of his courses, and that one of the students also raised a concern that she had been invited by Plaintiff **Culik** to a UDM faculty forum where alcohol was provided by

3

UDM.

19. In approximately April and May 2001, agents of Defendant **UDM** solicited statements concerning Plaintiff **Culik** from UDM faculty and others, purportedly as part of its "investigation" into the complaints made against Plaintiff **Culik** by the students.

20. Defendants **Bush, Hirst, Kerstner, Kowalczyk,** and **Trudeau** took this opportunity to further their own personal or political agendas by providing false and defamatory information to agents of Defendant **UDM** concerning Plaintiff **Culik** and his family, none of which had anything to do with the allegations made by the students that were being "investigated".

21. Defendant **Bush** made false statements that Plaintiff **Culik** hosted parties at his home where he provided illegal drugs and alcohol to minors and encouraged sexual activities; that **Culik** provided illegal drugs to students; that **Culik** uses illegal drugs; that a student (Brandon Berkowski) became addicted to heroin while involved with **Culik**; that **Culik** was under the influence of alcohol or illegal drugs at work; and that student(s) who refused to "party" with **Culik** received poor grades because of it.

22. Defendant **Hirst** made false statements that **Culik** had an affair with Jennifer Howard (Culik) while Howard was an undergraduate student at UDM; that **Culik** threw parties in which illegal drugs and alcohol were made available to minors and at those parties encouraged sexual activities and the making of pornographic movies; that **Culik** provided illegal drugs to students; that **Culik** had been under the influence of drugs while performing his job duties on campus; that a student (Mr. Berkowski) became addicted to heroin while "involved with" **Culik** at UDM; that Assistant Dean Beth Oljar ordered **Culik** not to meet with any female student unless in her (Oljar's) company; and that **Culik**

4

started a business with Patrick Parsons that went bankrupt, leaving UDM student employees unpaid.

**23.** Defendant **Kerstner** made false statements that **Culik** has been "under the influence" on campus; that **Culik** encouraged students to drink and use drugs; and that **Culik** used illegal drugs with students.

**24.** Defendant **Kowalczyk** made false statements that **Culik** had an affair with Jennifer Howard (Culik) when Howard was an undergraduate at UDM; that **Culik** sexually harassed Jennifer Howard (Culik); and that **Culik** bribed members of the English Department to obtain their support in electing him Department Chair

**25.** Defendant **Trudeau** made false statements that **Culik** coerced Jennifer Howard (Culik) into a sexual relationship; that **Culik** had sex with Jennifer Howard (Culik) in his office; that **Culik** had "improper" relationships with students that worked in the Writing Center involving the use of drugs; that **Culik** condoned drug use; that a student, Brandon Berkowski, was on heroin that he obtained from **Culik**; that **Culik** "encouraged students to live in the model of ... a drug-addicted sexual deviant who shot his wife;" that **Culik** referred to a black student as an "Oreo"; that **Culik** threw parties in which illegal drugs and alcohol were made available to minors and at these parties encouraged sexual activities; that **Culik** provided illegal drugs to students, uses illegal drugs on campus and tried to perform job duties while under their influence; that student(s) who refused to "party" with **Culik** received poor grades because of it; and that **Culik** abused his rights as a faculty parent.

**26.** Many of the above false and defamatory statements, as well as other tortious statements concerning Plaintiff **Culik** and his family, had been made by Defendants

5

**Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** prior to the time of Defendant **UDM**'s purported "investigation" of Plaintiff **Culik** and independent of any such "investigation" to each other, UDM faculty and staff and others.

**27.** Defendant **UDM** did not provide Plaintiff **Culik** with written notice of any of the charges against him until July 2001.

**28.** On or about July 26, 2001 a **UDM** Sexual Harassment Resolution Panel was convened and determined that Plaintiff **Culik** had violated the University's sexual harassment policy for "regular use of sexually explicit language and ... frequent attachment of sexual connotations to class discussion...."

**29.** In October 2001, Plaintiff Culik learned that his courses for the following semester had been canceled and that he was not listed as an instructor for the next semester.

**30.** Defendants' actions against Plaintiff are of a continuing nature.

## COUNT I
*(§301 of Labor Management Relations Act)*

**31.** Plaintiff repeats and realleges Paragraphs 1 through 30 set forth above with the same force and effect as though set forth in full herein.

**32.** As determined by this Court, the actions complained of herein may implicate provisions of the collective bargaining agreement (CBA) between UDM and UDM-PU (University of Detroit Professors' Union).

**33.** Defendants Bush, Kerstner and Trudeau are not, and never have been, UDM professors or subject to that UDM-UDMPU collective bargaining agreement.

6

## *Defamation*

**34.** Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** published false and defamatory information to agents of Defendant **UDM** and others concerning Plaintiff **Culik** as part of an alleged sexual harassment investigation.

**35.** Defendant **UDM** is liable for defamatory statements made by its employees within the scope of their employment relationship with Defendant **UDM**.

**36.** Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** knew that the information they published was false or misleading or disclosed the information negligently and maliciously, with a reckless disregard for its truth.

**37.** Defendants' statements were not privileged.

**38.** Defendants' defamatory statements resulted in Plaintiff's suspension and removal as Department Chair and have otherwise negatively impacted his employment, career and reputation.

## *Tortious Interference with an Advantageous Business Relationship or Expectancy*
*(against Bush, Hirst, Kerstner, Kowalczyk and Trudeau, only)*

**39.** Plaintiff **Culik** had an advantageous business relationship or expectancy with the University of Detroit Mercy.

**40.** Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** were aware of that advantageous business relationship or expectancy.

**41.** Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** intentionally and improperly interfered with that advantageous business relationship or expectancy as part of the alleged sexual harassment investigation.

**42.** Indeed, Defendant **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** actively sought to destroy Plaintiff **Culik's** employment relationship with **UDM**.

7

43.     The actions of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** in seeking to improperly interfere with Plaintiff Culik's employment relationship with **UDM** were intentional, in disregard for the rights and sensibilities of the Plaintiff.

44.     As a direct and proximate result of the wrongful actions of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau,** as described above, Plaintiff has suffered injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of professional reputation and esteem in the community, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life, including the right to seek and pursue gainful occupation of choice.

*Intentional Infliction of Emotional Distress*

45.     The conduct of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** in making the above false and defamatory statements concerning Plaintiff **Culik** as well as the conduct of Defendant **UDM** in relying on that false and defamatory information during the alleged sexual harassment investigation in suspending Culik and removing him as Department Chair is extreme, outrageous, intentional and reckless.

46.     As a direct and proximate result of Defendants' wrongful actions, as described above, Plaintiff has suffered injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of professional reputation and esteem in the community, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life, including the right to seek and pursue gainful occupation of choice.

## COUNT II
### *(Tort claims under Michigan Common Law)*

**47.** Plaintiff repeats and realleges Paragraphs 1 through 46 set forth above with the same force and effect as though set forth in full herein.

**48.** As set forth above, the defamatory and otherwise tortious conduct of Defendants **Bush, Hirst, Kerstner, Kowalczyk and Trudeau** in disseminating false information about Plaintiff **Culik** also preceded and was independent of the "investigation" of Plaintiff by Defendant **UDM** that commenced in approximately April 2001.

### *Defamation*

**49.** As set forth above, Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** published false and defamatory information to agents of Defendant **UDM** and others concerning Plaintiff **Culik** independent of statements given as part of an alleged investigation into sexual harassment complaints by students.

**50.** Defendant **UDM** is liable for defamatory statements made by its employees within the scope of their employment relationship with Defendant **UDM.**

**51.** Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** knew that the information they published was false or misleading or disclosed the information negligently and maliciously, with a reckless disregard for its truth.

**52.** Defendants' statements were not privileged.

**53.** Defendants' defamatory statements have negatively impacted Plaintiff's employment, career and reputation.

### *Tortious Interference with an Advantageous Business Relationship or Expectancy*
*(against Bush, Hirst, Kerstner, Kowalczyk and Trudeau, only)*

**54.** Plaintiff **Culik** had an advantageous business relationship or expectancy with the University of Detroit Mercy.

9

55. Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** were aware of that advantageous business relationship or expectancy.

56. Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** intentionally and improperly interfered with that advantageous business relationship or expectancy independent of statements they provided as part of an alleged sexual harassment investigation into complaints made by students.

57. Indeed, Defendant **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** actively sought to destroy Plaintiff **Culik's** employment relationship with **UDM**.

58. The actions of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** in seeking to improperly interfere with Plaintiff Culik's employment relationship with **UDM** were intentional, in disregard for the rights and sensibilities of the Plaintiff.

59. As a direct and proximate result of the wrongful actions of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau,** as described above, Plaintiff has suffered injuries and damages, including but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of professional reputation and esteem in the community, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life, including the right to seek and pursue gainful occupation of choice.

*Intentional Infliction of Emotional Distress*

60. The conduct of Defendants **Bush, Hirst, Kerstner, Kowalczyk** and **Trudeau** in making the above false, defamatory and tortious statements concerning Plaintiff **Culik** independent of statements they provided as part of an alleged sexual harassment investigation was extreme, outrageous, intentional and reckless.

61. As a direct and proximate result of Defendants' wrongful actions, as described

10

above, Plaintiff has suffered injuries and damages, including but not limited to loss of career opportunities, loss of professional reputation and esteem in the community, mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment, and loss of the enjoyment of the ordinary pleasures of life, including the right to seek and pursue gainful occupation of choice.

## Relief Requested

For all of the foregoing reasons, Plaintiff **Hugh Culik** demands judgment against Defendants as follows:

**A.**   **Legal Relief:**

    **1.**   Compensatory damages in whatever amount he is found to be entitled;

    **2.**   Exemplary and punitive damages in whatever amount he is found to be entitled;

    **3.**   A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled.

    **4.**   An award of interest, costs and reasonable attorney fees.

**B.**   **Equitable Relief:**

    **1.**   An order out of this Court reinstating Plaintiff to the position he would have held had there been no wrongdoing by Defendants.

    **2.**   An award of interest, costs and reasonable attorney fees.

    **3.**   Whatever other equitable relief appears appropriate at the time of final judgment.

                        DEBORAH L. GORDON, PLC

                        By: _/s/ D. L. Gordon_
                        Deborah L. Gordon (P27058)
                        Carol A. Laughbaum (P41711)
                        Attorneys for Plaintiff
                        26862 Woodward Avenue, Suite 202
                        Royal Oak, Michigan 48067-0959
Dated: April 26, 2002          Telephone (248) 542-3784

## JURY DEMAND

Plaintiff **Hugh Culik** by his attorneys **Deborah L. Gordon, PLC** demands a trial by jury of all the issues in this cause.

                          **DEBORAH L. GORDON, PLC**

                          By: _/s/ Deborah L. Gordon_
                          Deborah L. Gordon (P27058)
                          Carol A. Laughbaum (P41711)

Dated: January 28, 2002            Attorneys for Plaintiff

12